

EXHIBIT C

# CONNELLY LAW OFFICES, PLLC

John R. Connelly
Lincoln C. Beauregard º
Micah R. LeBank *
Nathan P. Roberts
Amanda M. Searle ^
Evan T. Fuller
Meaghan M. Driscoll
Marta L. O'Brien
Samuel J. Daheim
Jackson R. Pahlke
Matthew J. Wurdeman
Hollie M. Connelly
Christian P. McDonald
John Francis Connelly
Dalia Ibrahim
Susan E. Wassell ☉±
John B. McEntire, IV
Colin G. Prince

December 3, 2024

**Reply to Tacoma Office:**
2301 North 30th Street
Tacoma, WA 98403
**Seattle Office:**
Smith Tower
506 2nd Ave, 33rd Floor
Seattle, WA 98104

Toll Free: (855) 593-5100
Tacoma: (253) 593-5100
Seattle: (206) 816-3002
Fax: (253) 593-0380
www.connelly-law.com

ºAlso Admitted in Arizona
*Also Admitted in Oregon
^Also Admitted in California
☉Also Admitted in DC
±Also Admitted in Colorado

*Via E-Mail to:* Theresa@Cowbellcyber.ai

Theresa Le, Esq.
Chief of Claims Officer
Cowbell Insurance Agency LLC
6800 Koll Center Pkwy, Suite 250
Pleasanton, CA 94566

>    **RE:**    *Insured:  Connelly Law Offices, PLLC*
> *Policy Number:  FLY-CB-DUIRCVKXK-003*
> *Date of Loss:  July 17, 2024*
> *Policy No.:     FLY-CB-DU1RCVKXK-003*
> *Policy Period:       May 06, 2024 to May 06, 2025*
> *Claim No.:     CL01-FLY-DU1RCVKXK-003*
> *NOTICE OF CLAIM PURSUANT TO RCW 48.30.015 – Insurance Fair Conduct Act*

Dear Ms. Le:

   This letter is in response to your letters of September 10, 2024, October 10, 2024, and November 22, 2024, wherein Cowbell has denied coverage for this claim under both the **Security Breach Liability Coverage Section** and under the **Computer Funds Transfer Fraud** Endorsement to the policy and has refused to pay the claim brought against Connelly Law Offices by Cary Woods.  This letter will serve as additional notice to Cowbell Cyber, Inc. ("Cowbell") and Spinnaker Insurance Company ("Spinnaker") of Connelly Law Offices claims under the Washington Insurance Fair Conduct Act RCW 48.30.015 ("IFCA").  IFCA provides that "no person engaged in the business of insurance shall engage in unfair methods of competition or in unfair or deceptive acts or practices in the conduct of such business."  Further, "an insurer engaged in the business of insurance may not unreasonably deny a claim for coverage or payment of benefits to any first party claimant."  RCW 48.30.015(7).  The purpose

Cowbell Insurance Agency
    *Named Insured: Connelly Law Offices, PLLC*
    *Policy Number: FLY-CB-DUIRCVKXK-003*
    *Date of Loss: July 17, 2024*
Page 2 of 6

of this letter is to provide Cowbell/Spinnaker with 20-days' notice of this claim. RCW 48.30.015(8)

In your letter dated November 22, 2024, you state that although Cowbell, on behalf of Spinnaker, agreed to defend Connelly Law Offices against Mr. Woods' claim but that it denied any obligation to indemnify. Cowbell also stated that it would not raise a defense of lack of consent or that the payment represents a voluntary payment provided that the settlement is for no more than $1,122,263.03. We have now settled the claim with Mr. Woods and request that Cowbell pay the claim under the policy. We acknowledge, that Cowbell has paid our claim under the Social Engineering limit and has paid $100,000.00 towards this claim leaving $900,000 remaining under the policies aggregate limit.

**Security Breach Liability Coverage Section**

Cowbell has denied coverage under the Security Breach Liability section and refused to pay Mr. Woods' claim. In short, Cowbell claims that there was no Wrongful Act because there was no "failure to prevent unauthorized access to …. electronic or non-electronic data containing personal information." Cowbell's coverage denial has focused on the definition of personal information in the policy. In doing so, Cowbell has focused its argument on personal information belonging to Mr. Woods. However, nowhere in the policy does it state whose personal information needs to be compromised. Instead, it simply states that "Wrongful act means any actual or alleged failure to prevent unauthorized access to, or use of, electronic or non-electronic data containing Personal Information." Personal information is defined to include (d) "security codes [and] passwords." Further, a Security Breach means a privacy breach that includes the acquisition of Personal Information held within a Computer System.

Thus, the policy applies if Connelly Law Offices "failed to prevent unauthorized access to electronic data containing security codes and passwords." This is exactly what occurred in this case. Connelly Law Offices failed to prevent unauthorized access to the password to Mr. LeBank's e-mail account. This allowed the hackers to obtain unauthorized access to Mr. LeBank's e-mail which is held within a computer. The hackers obtained access to the passwords to access Mr. LeBank (an individual's) e-mail and used his e-mail account to trick Connelly Law Offices into sending Mr. Woods' money to a false bank account. Indeed, it was the failure to prevent unauthorized access to Mr. LeBank's e-mail account that resulted in the fraud. No where in any of Cowbell's coverage decisions do you consider that Mr. LeBank's personal information was compromised. This occurred as a result of Connelly Law Offices failure to prevent the hackers from obtaining access to Mr. LeBank's e-mail password. This satisfies the definition of wrongful act under both prongs (a) and (b) of the Security Breach Liability Coverage.

Cowbell Insurance Agency
*Named Insured: Connelly Law Offices, PLLC*
*Policy Number: FLY-CB-DUIRCVKXK-003*
*Date of Loss: July 17, 2024*
Page 3 of 6

**Computer Funds Transfer Fraud**

Next, I turn to the denial of coverage under the Computer Funds Transfer Fraud Endorsement ("CFTF") to the policy. The CFTF policy states that Cowbell/Spinnaker will pay for a "loss resulting directly from a fraudulent instruction directing a financial institution to debit your transfer account and transfer … money … from that account." Spinnaker denied coverage because it claims that there was no loss because the funds were not "fraudulently transferred" and because the loss did not result from a "fraudulent instruction." Multiple Courts have evaluated similar CFTF policies and held that they provided coverage in similar situations involving fraudulent wire instructions sent via e-mail that resulted in the fraudulent funds transfers. This is particularly true where the insured e-mail was hacked allowed the hackers to direct the funds transfer from inside the company's e-mail system. *See e.g., City of Unalaska v. National Union Fire Insurance Company*, 591 F.Supp.3d 440 (D. Alaska 2022); *Earnst & Haas*, 23 F.4th 1195 (9th Cir. 2022); *American Tooling Center, Inc. v. Travelers Casualty & Surety Co. of America,* 895 F.3d 455 (2018); *Principle Solutions Group, LLC v. Ironshore Indemnity, Inc.* 944 F.3d 886 (2019); *Medidata Sols., Inc. v. Fed. Ins. Co*., 729 Fed. App'x 117 (2d Cit. 2018).

For example, in *City of Unalaska v. National Union Fire Insurance Company*, 591 F.Supp.3d 440 (D. Alaska 2022) the insurer denied the city coverage under the Computer Fraud Insuring Agreement of its government crime insurance policy for losses resulting from funds transferred in response to fraudulent e-mail requests. The Court held that fraudulent e-mails arranging to receive an electronic transfer from the city and requesting such payments, came within the meaning of "use of a computer" and held that the Computer Fraud Insuring Agreement applied. The Court held this, even though the city voluntarily initiated the funds transfer. Thus, there was both a "fraudulent transfer" and "fraudulent instructions," even though the city followed them and voluntarily initiated the wire transfer. The court found the reasoning by the Sixth Circuit and Eleventh Circuits in *American Tooling Center, Inc. v. Travelers Casualty & Surety Co. of America,* 895 F.3d 455 (2018) and *Principle Solutions Group, LLC v. Ironshore Indemnity, Inc.* 944 F.3d 886 (2019) persuasive. In *American Tooling* the insured received a series of e-mails, purportedly from its Chinese vendor, claiming that the vendor had changed its bank accounts, and the insured should make its payments via wire transfer to these new accounts. The Sixth Circuit, applying Michigan law, held that the insured's loss was covered under the CFIA. In *Principle Solutions Group, LLC* the Eleventh Circuit applying Georgia law, concluded that "the ordinary meaning of the phrase 'resulting directly from' requires proximate causation between a covered event and a loss, not an 'immediate link." Indeed, an employees unwitting facilitation of fund transfers does not sever the causal chain when the relevant policy language required that losses result directly from the fraudulent action. *Medidata Sols., Inc. v. Fed. Ins. Co*., 729 Fed. App'x 117 (2d Cit. 2018).

In *Earnst & Haas*, 23 F.4th 1195 (9th Cir. 2022) the insurer denied coverage under a similar CFIA when the insured's employee "was directed by fraudulent email request and payment invoices to transfer … funds to a swindling third party." The district court granted the

Cowbell Insurance Agency
    *Named Insured:  Connelly Law Offices, PLLC*
    *Policy Number:  FLY-CB-DUIRCVKXK-003*
    *Date of Loss:  July 17, 2024*
Page 4 of 6

insureds motion to dismiss following the Ninth Circuits unpublished opinion in *Pestmaster* and concluding that the loss was not covered under the computer fraud provision because "the relevant wire transfers were authorized and the … imposter's fraudulent emails did not directly cause the transfer of any funds." Id. at 1201-02.

    The Ninth Circuit reversed the district court's decision, holding that the insured's loss was covered by the CFIA. First, the panel concluded that the district court wrongly relied on *Pestmaster* because that case involved dispositively different facts.  Second, the panel determined that the district court engaged in an "improperly narrow reading of the contractual language" when it interpreted the CFIA to mean that "a direct loss is limited to unauthorized use, like hacking."  Instead, the panel found the Sixth Circuits' reasoning in *American Tooling* persuasive on this point, concluding that the insured's loss "resulted directly" from the fraud despite that an unwitting employee authorized the wire transfers.

    This case is identical to *Earnst and Haas*.  Here, hackers obtained unauthorized access to Micah LeBank's e-mail password giving them access to his e-mail account.  The hackers used that unauthorized access to create an account for a fake Cary Woods.  Fake Cary Woods then sent Connelly Law Offices wire instructions and used Micah LeBank's e-mail to instruct Sarah Streck to wire the funds to the fake Cary Woods.  Fake Micah LeBank then sent an e-mail to Sarah Streck directing her to verify the instructions with fake Cary Woods which she did before initiating the wire.  The "fraudulent instructions" from fake Cary Woods and fake Micah LeBank resulted directly in the fraudulent transfer of the funds to the bad actor.  This is exactly what occurred in *Earnst and Haas* and *City of Unalaska*.  In both cases the 9th Circuit held that the CFIA (identical to a CFTF) applied.  This is consistent with opinions from the Sixth Circuit, Eleventh Circuit, and Second Circuit.  While no Washington Court has ruled in this exact situation, we are confident that they will follow the decisions from Alaska and California, applying similar insurance provisions in nearly identical situations.  Cowbell's analysis ignores these cases and ignores 9th Circuit authority that is contrary to its position.  The CFTF endorsement provides coverage for this claim.

    **Washington Insurance Law**

    Washington insurance law is premised on the foundational principle that "the purpose of insurance is to insure." *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 68 (1983). Accordingly, courts "liberally construe inclusionary clauses, providing coverage whenever possible." *Moeller v. Farmers Ins. Co. of Washington*, 155 Wn. App. 133, 141 (2010). For this reason, Washington courts have consistently rejected attempts by insurers to read exclusionary language into other portions of a policy, particularly into coverage grants. *See e.g., Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn. 2d 869 at 877 (finding that a coverage grant is "an odd place to look for exclusions of coverage" and refusing to read an "exclusionary guard" into insuring language and noting that "the [insurance] industry knows how to protect itself and it knows how to write exclusions and conditions").

Washington courts' uniform refusal to read unwritten restrictions into insurance policies is anchored in another tenet of Washington policy interpretation: that a court should give a policy the construction that an "average [person] purchasing insurance" would give. *Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 434 (1976). The "proper inquiry is not whether a learned judge or scholar can, with study, comprehend the meaning of an insurance contract" but instead what "would be meaningful to the layman." *Boeing* 113 Wn.2d at 881. Thus, when undefined terms are used in an insurance policy, they "must be given their plain, ordinary, and popular meaning" and this is done by looking to "standard English dictionaries." Id. at 877. Defined terms are applied as written and courts will not add words that do not exist in the policy. *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wash. 2d 171, 181–82, 400 P.3d 1234, 1240 (2017), *as modified* (Aug. 16, 2017). Further, even if policy language could plausibly be read to contain a restriction eviscerating coverage but could also be reasonably read not to, coverage is owed. This is because "ambiguity exists if the language is fairly susceptible to two different reasonable interpretations [and] ambiguities in insurance contracts are construed against the insurer." *Am. Star Ins. Co. v. Grice*, 121 Wn.2d 869, 875 (1993). This rule is enforced irrespective of whether the insurer intended another meaning. *See, e.g., Riley v. Viking Ins. Co. of Wisconsin*, 46 Wn. App. 828, 830 (1987) (holding the most favorable meaning to the insured is applied "even though the insurer may have intended another meaning").

Washington courts will not, and have never, "interpreted" a policy by rewriting it for an insurer's benefit. The Supreme Court of Washington's *Boeing v. Aetna* decision provides an example of just how forcefully insurer's attempts in this regard have been rejected. 113 Wn.2d 869, 876, 784 P.2d 507, 511 (1990). There, the issue was whether several insurers' proposed unwritten exclusionary terms modified their promise to pay for sums "an insured became legally obligated to pay as damages." *Id.* The answer was simple: "For us to read the words 'as damages' to exclude coverage for cleanup costs, would require this court to rewrite the principles of insurance contract analysis in Washington, and then to retroactively apply these rewritten principles to the policyholders that bought their policies decades ago. However, we decline to do this. The industry knows how to protect itself and it knows how to write exclusions and conditions." *Id*. at 887.

Scores of Washington Supreme Court decisions alone deliver the same outcome. *See, e.g., Am. Nat. Fire Ins. Co. v. B & L Trucking & Const.*,134 Wn.2d at 428, 951 P.2d 250 (1998) (holding that a court "will not add language to the policy that the insurer did not include" and that because the insurer "drafted the policy language; it cannot now argue its own drafting is unfair"); *Safeco Ins. Co. of Am. v. Davis*, 44 Wn. App. 161, 166, 721 P.3d 550 (1986) ("If Safeco intended to simply exclude coverage for unlicensed and underage[] drivers, it could have done so in clear terms."). Not surprisingly, the Western District of Washington's decisions are in accord. *See e.g. Zurich Am. Ins. Co. v. Employers Ins. Co. of Wausau*, No. C03-2982L, 2005 WL 1719928, at *3 (W.D. Wash. 2005) ("Had Wausau intended to provide coverage only where the insured discovered the property damage during the policy period, it could easily have included language to that effect. Instead, it used the term "manifest" which has a number of connotations

Cowbell Insurance Agency
*Named Insured: Connelly Law Offices, PLLC*
*Policy Number: FLY-CB-DUIRCVKXK-003*
*Date of Loss: July 17, 2024*
Page 6 of 6

in ordinary speech and does not necessarily require discovery, comprehension, or understanding on the part of the insured.").

As provided above, Connelly Law Offices purchased a Cyber Insurance Policy if it was the victim of a Cyber Attack and Security Breach. Now, that a Cyber Attack and Security Breach has occurred it looked to Cowbell Cyber and Spinnaker Insurance Company honor its legal and contractual obligations and to pay the claim. Cowbell Cyber and Spinnaker is construing the policy narrowly in favor of the insurer, adding words to the insurance policy that do not exist, failing to apply the plain language of the policy, and ignoring Ninth Circuit law that applies the CFTF Endorsement to this exact set of facts. In doing so, it has unreasonably denied Connelly Law Offices claim for coverage and payment of benefits.

RCW 48.30.015(8) requires that twenty days prior to filing an action an insured is required to provide written notice to the insurer of the basis for the claim. This letter provides Cowbell and Spinnaker with the required 20-days' notice that if they do not pay the claim under the above policy that Connelly Law Offices will file a claim against them for payment of the benefits owed under the policy including attorney's fees and treble damages as provided for under RCW 48.30.015(1)-(2).

Very truly Yours,

Micah R. LeBank

Enclosure
cc:   Spinnaker Insurance
      WA State Insurance Commissioner

---

### CERTIFICATE OF MAILING

The undersigned, Pamela Wells, certifies, under penalty of perjury under the laws of the State of WA, that on the 4th day of December, 2024, I caused to be delivered, via USPS certified mail return receipt requested, a properly stamped and addressed envelope containing a copy of the documents to which this certificate if affixed to:

| | |
|---|---|
| Theresa Le, Esq.<br>Cowbell Insurance Agency LLC<br>6800 Koll Center Pkwy, Suite 250<br>Pleasanton, CA 94566 | Office of the Insurance Commissioner<br>IFCA Notification Office Support Unit<br>P.O. Box 40255<br>Olympia, WA 98504-0255 |
| Spinnaker Insurance Company<br>1 Pluckemin Way, Suite 102<br>Bedminster, NJ 09721 | *Pamela Wells* |